UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

RAYMOND JULIUS MELTON,

                Petitioner,

   v.

BRENT REINKE, Director of the Idaho
Department of Correction,

             Respondent.

Case No. 1:10-cv-00364-CWD

**MEMORANDUM DECISION AND
ORDER**

      Pending before the Court is Petitioner Raymond Julius Melton's Amended Petition

for Writ of Habeas Corpus. (Dkt. 47.) This case was stayed for a time while Petitioner

pursued state postconviction remedies and has now been reopened.

      On February 19, 2014, the Court dismissed Claims Five, Seven, and Nine of the

Petition with prejudice as non-cognizable. (Dkt. 50.) Respondent has filed a Motion for

Summary Dismissal with respect to Petitioner's remaining claims. (Dkt. 60.) Petitioner

**MEMORANDUM DECISION AND ORDER  1**

has filed a response to the Motion, and Respondent has filed a Reply. (Dkt. 67, 69.) The

Court takes judicial notice of the records from Petitioner's state court proceedings, lodged

by Respondent on March 14, 2011; October 19, 2012; June 6, 2013; and May 20, 2014.

(Dkt. 13, 30, 37, 59.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551

(9th Cir. 2006).

The parties have consented to the jurisdiction of a United States Magistrate Judge

to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c). (Dkt. 12.)

Having carefully reviewed the record, including the state court record, the Court finds

that the parties have adequately presented the facts and legal arguments in the briefs and

record and that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly,

the Court enters the following Order granting Respondent's Motion and dismissing this

habeas case with prejudice.

## BACKGROUND

Petitioner pleaded guilty in the Fifth Judicial District Court, in Gooding County,

Idaho, to one count of lewd conduct with a minor child under 16 years of age, in violation

of Idaho Code § 18-1508. He was sentenced to a unified term of life imprisonment with

25 years fixed. (State's Lodging B-4 at 1.) Petitioner appealed his sentence, arguing that

his sentence was an abuse of discretion under Idaho law. (State's Lodging B-1.) The

Idaho Court of Appeals affirmed, and the Idaho Supreme Court denied review. (State's

Lodging B-4, B-7.)

While his direct appeal was still pending, Petitioner filed an initial petition for postconviction relief, which he later amended through counsel. (State's Lodging C-1 at 1-5, 36-38.) The amended petition alleged that Petitioner's guilty plea was not knowing and voluntary and that trial counsel rendered ineffective assistance by (a) pressing Petitioner to plead guilty, (b) advising Petitioner that a guilty plea was the only way to resolve the matter, (c) failing to advise Petitioner of any defenses, (d) failing to prepare pre-trial or to file motions to suppress, (e) failing to take the time or make the effort required to take Petitioner's case to trial, (f) failing to investigate the case, and (g) failing to explain the true nature of the charge and the consequences of pleading guilty. (State's Lodging C-1 at 37.) At the evidentiary hearing on the petition, Petitioner claimed that his trial counsel was also ineffective for failing to move for a reduction of sentence under Idaho Criminal Rule 35 and for failing to procure a plea agreement that was binding as to sentencing. (State's Lodging C-2 at 72-73, 127.)

The state district court denied postconviction relief on all claims, including the Rule 35 claim and the claim regarding a binding sentencing agreement. (State's Lodging C-1 at 42-55; C-2 at 131, 134-35, 140.) Petitioner appealed with the aid of the State Appellate Public Defender's Office; however, postconviction appellate counsel later moved to withdraw after concluding that the appeal was frivolous. (State's Lodging D-4, D-5.) The Idaho Supreme Court granted the motion, and Petitioner proceeded without counsel. His appeal was dismissed when he did not file a timely opening brief. (State's

Lodging D-10.)

Shortly thereafter, Petitioner returned to the trial court and filed a second postconviction petition, arguing that his initial postconviction counsel rendered ineffective assistance by failing "to submit any evidence or lagimate [sic] argument at my evidentiary hearing." (State's Lodging E-1 at 2.) The trial court summarily dismissed the petition without addressing Petitioner's motion for appointment of counsel, and the Idaho Court of Appeals affirmed. (*Id*. at 89-104; State's Lodging F-6.) The Idaho Supreme Court granted review and affirmed, concluding that, "although the district court erred in not considering [Petitioner's] motion for appointment of counsel" before dismissing the petition, that error was not prejudicial. (State's Lodging F-13 at 9.)

Petitioner later filed a third postconviction petition in state court. (State's Lodging G-1 at 1-7.) Petitioner argued that his postconviction appellate counsel rendered ineffective assistance by (1) not raising a claim of ineffective assistance of previous postconviction counsel, and (2) not "federaliz[ing]" Petitioner's claims. (*Id*. at 3-6.) The trial court denied Petitioner's motion to appoint counsel and dismissed the petition. (*Id*. at 33-42, 44-45.)

Petitioner was appointed counsel to represent him on appeal from the dismissal of his third postconviction petition, but counsel later withdrew after Petitioner decided to represent himself. (State's Lodging H-4 to H-7.) The Idaho Court of Appeals affirmed, concluding that the petition was untimely. (State's Lodging H-9.) The Idaho Supreme

Court denied review. (State's Lodging H-12.)

## DISCUSSION

Because the Court previously dismissed Claims Five, Seven, and Nine of the

Petition, the following seven claims remain at issue in this case:

Claim One: Ineffective assistance of trial counsel for failing to advise Petitioner that he was not required to participate in the court-ordered psychosexual evaluation (Dkt. 47-1 at 1);

Claim Two: Ineffective assistance of trial counsel for failing to move to suppress the psychosexual evaluation (*id*.);

Claim Three: Ineffective assistance of trial counsel for failing to ensure that Petitioner's allegedly binding plea agreement was enforced (*id*. at 5);

Claim Four: Ineffective assistance of trial counsel for (a) pressing Petitioner to plead guilty and failing to ensure his guilty plea was knowing and voluntary, (b) failing to advise Petitioner of any defenses, (c) failing to prepare pretrial or to file motions to suppress, (d) failing to take the time or make the effort to take the case to trial, (e) failing to investigate the case, and (f) failing to explain the true nature of the charge and the consequences of pleading guilty (*id*. at 10);

Claim Six: Prosecutorial misconduct based on the prosecutor allegedly eliciting false testimony from the victim at the preliminary and sentencing hearings (*id*. at 16);

Claim Eight: Ineffective assistance of direct appeal counsel for raising a sentencing claim instead of federal constitutional claims, particularly his claim of

prosecutorial misconduct (*id*. at 41); and

Claim Ten:     Ineffective assistance of trial counsel for failing
               to move for a reduction of sentence under Idaho
               Criminal Rule 35 (*id*. at 47).

Respondent now seeks dismissal of all of these remaining claims on the ground

that they are procedurally defaulted. (Dkt. 60-1.)

## 1.     Standard of Law Governing Summary Dismissal

Rule 4 of the Rules Governing Section 2254 Cases ("Habeas Rules") authorizes

the Court to summarily dismiss a petition for writ of habeas corpus or claims contained in

the petition when "it plainly appears from the face of the petition and any attached

exhibits that the petitioner is not entitled to relief in the district court." The Court may

also deny a habeas petition on the merits even if it otherwise procedurally barred. *See* 28

U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the

merits, notwithstanding the failure of the applicant to exhaust the remedies available in

the courts of the State.")

## 2.     Standard of Law Governing Procedural Default

A habeas petitioner must exhaust his remedies in the state courts before a federal

court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842

(1999). This means that the petitioner must invoke one complete round of the state's

established appellate review process, fairly presenting all constitutional claims to the state

courts so that they have a full and fair opportunity to correct alleged constitutional errors

at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847.

The mere similarity between a federal claim and a state law claim, without more, does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). General references in state court to broad constitutional principles, such as due process, equal protection, or the right to a fair trial, are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). The law is clear that, for proper exhaustion, a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim, "regardless of whether the petitioner [is] proceeding pro se." *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001) (emphasis omitted).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has *completely failed* to raise a particular claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; and (3)

when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To be an "adequate" state ground, a state court's procedural bar must be one that is "'clear, consistently applied, and well-established' at the time of the petitioner's purported default." *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar is "independent" of federal law if it does not rest on federal grounds and is not intertwined with federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003).

## A. *General Standard of Law for Cause and Prejudice under* Coleman v. Thompson

Even if a claim is a procedurally defaulted, that claim may still be heard on the merits if a petitioner establishes cause and prejudice to excuse the default.[1] *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner generally bears "the burden of showing not merely that the errors [in his proceeding] constituted a

---

[1] Although there is also a miscarriage of justice exception to the procedural default doctrine, *Schlup v. Delo*, 513 U.S. 298, 324 (1995), Petitioner does not allege that he is factually innocent of the crime, *see Bousley v. United States*, 523 U.S. 614, 623 (1998). (Dkt. 67.) Therefore, the Court need not address the miscarriage of justice exception.

possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

   **B.**   ***Standard of Law for Cause and Prejudice under* Martinez v. Ryan**

A petitioner does not have a federal constitutional right to effective assistance of counsel during state postconviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). As a result, the general rule is that any errors of counsel during the postconviction action cannot serve as cause to excuse a procedural default. *Coleman*, 501 U.S. at 752.

*Martinez v. Ryan*, 132 S. Ct. 1309 (2012), established a limited exception to this general rule that applies only to Sixth Amendment ineffective assistance of counsel ("IAC") claims. *Martinez* held that inadequate assistance of postconviction review ("PCR") counsel or lack of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 1315. In *Nguyen v. Curry*, 736 F.3d 1287, 1293 (9th Cir. 2013), the Ninth Circuit extended *Martinez*, holding that it can also apply to procedurally defaulted claims of ineffective assistance of direct appeal counsel.

In *Trevino v. Thaler*, the Supreme Court described the *Martinez* analysis as consisting of four prongs:

> We consequently read *Coleman* as containing an exception, allowing a federal habeas court to find "cause,"

**MEMORANDUM DECISION AND ORDER  9**

> thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

133 S. Ct. 1911, 1918 (2013) (citing *Martinez*, 132 S. Ct. at 1318-19, 1320-21) (alterations in original). *Trevino* also extended *Martinez* to apply not only where a state *requires* IAC claims to be raised in postconviction proceedings, but also where a state's "procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino*, 133 S. Ct. at 1921.

Therefore, *Martinez* applies in Idaho where the postconviction setting was the first forum in which the ineffective assistance of trial counsel claim based on matters arising outside the record could have been raised and developed. *See Matthews v. State*, 839 P.2d 1215, 1220 (Idaho 1992) (recognizing that in Idaho the post-conviction setting is the "preferred forum for bringing claims of ineffective assistance of counsel," though in limited instances such claims may be brought on direct appeal "on purported errors that arose during the trial, as shown on the record").

### 3.    Discussion

Petitioner does not dispute Respondent's contention that his remaining claims are procedurally defaulted. Rather, Petitioner argues that cause and prejudice excuse the default of each claim. For the reasons that follow, the Court disagrees.

#### A.    *Claim Six and Any Claim of an Involuntary Plea*

Petitioner does not assert that traditional, or *Coleman*, cause and prejudice exist to excuse the default of any of his claims. Further, *Martinez v. Ryan* applies only to underlying claims of ineffective assistance of counsel. *See Hunton v. Sinclair*, 732 F.3d 1124, 1126-27 (9th Cir. 2013) (declining to extend *Martinez* to underlying *Brady* claims), *cert. denied*, 134 S. Ct. 1771 (2014). Thus, it does not apply to Claim Six, which alleges prosecutorial misconduct.

Although the Petition does not include a claim that Petitioner's guilty plea was not knowing, intelligent, and voluntary, Petitioner attempts to raise that issue in his response to the Motion for Summary Dismissal. (Dkt. 67 at 12-14.) Like Claim Six, any claim of an involuntary guilty plea is not subject to a *Martinez* analysis because it is not an IAC claim.

Petitioner has not established *Coleman* cause and prejudice to excuse the default of Claim Six or of any claim that his guilty plea was not knowing and voluntary.

#### B.    *Claims Three, Four, and Ten*

*Martinez* does not apply to Claims Three, Four (including all sub-claims), or Ten.

Those claims were defaulted not because of ineffective assistance of initial PCR counsel, but because Petitioner's first postconviction appeal was dismissed for failure to file an opening brief.

The *Martinez* exception applies only to the lack of counsel or ineffectiveness of counsel in the *initial* postconviction review proceeding. It "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance." *Martinez*, 132 S. Ct. at 1320. Rather, the Court in *Martinez* was singularly concerned that, if ineffective assistance of trial counsel claims were not brought in the collateral proceeding which provided the first occasion to raise such claims, the effect was that the claims could not be brought *at all. Id.* at 1316. Therefore, a petitioner may not assert as cause attorney error that occurred in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, [or] petitions for discretionary review in a State's appellate courts." *Id.* at 1320.

Here, Petitioner's initial PCR counsel raised all of the grounds in Claims Three, Four, and Ten in the initial postconviction proceedings, either in the amended petition itself or at the evidentiary hearing on the petition. (State's Lodging C-1 at 37; C-2 at 119-127.) The state district court denied all of these claims on the merits. (State's Lodging C-1 at 44-55; C-2 at 128-39.) The default of these claims occurred *on appeal* from the dismissal of the initial PCR proceedings, rather than at the initial postconviction review stage. Thus, *Martinez* cannot be used to establish cause and prejudice for the default of

Claims Three, Four, or Ten.

**C.** ***Claims One, Two, and Eight***

Claims One, Two, and Eight were not raised by initial PCR counsel, either in the petition or at the evidentiary hearing. Thus, pursuant to *Martinez*, the Court will now consider whether those claims are substantial and whether initial PCR counsel was ineffective in failing to raise them.

i.    <u>Prong One of *Martinez*: Substantiality of Underlying IAC Claims</u>

For the *Martinez* exception to apply, a petitioner must bring forward facts demonstrating that his underlying IAC claim is substantial. The United States Supreme Court has defined "substantial" as a claim that "has some merit." *Martinez*, 132 S. Ct. at 1318 (comparing the standard for certificates of appealability from *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). Stated inversely, a claim is "*in*substantial" if "it does not have any merit or . . . is wholly without factual support." *Id.* at 1319.

Determining whether an IAC claim is substantial requires a federal district court to examine the claim under *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

Whether an attorney's performance was deficient is judged against an objective

standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the

"reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions, such as the choice of a defense or what evidence to present,

"are virtually unchallengeable" if "made after thorough investigation of law and facts

relevant to plausible options." *Strickland*, 466 U.S. at 690. Moreover, an attorney who

decides not to investigate a particular theory or issue in the case is not ineffective so long

as the decision to forego investigation is itself objectively reasonable:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on

**MEMORANDUM DECISION AND ORDER  14**

investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91.

If a petitioner shows that counsel's performance was deficient, the next step in the

*Strickland* inquiry is the prejudice analysis. "An error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the

error had no effect on the judgment." *Id.* at 691. To satisfy the prejudice standard, a

petitioner "must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

As the *Strickland* Court instructed:

In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

**MEMORANDUM DECISION AND ORDER  15**

*Id.* at 695-96. For a petitioner to establish *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 792 (2011).

These standards from *Strickland* for determining deficient performance and prejudice are, of course, the standards for an eventual review of the merits of the underlying IAC claim. The question whether an IAC claim is substantial under *Martinez* is not the same as a merits review; rather, it is more akin to a preliminary review of a *Strickland* claim for purposes of determining whether a certificate of appealability should issue. *See Martinez*, 132 S.Ct. at 1318-19. Therefore, a court may conclude that a claim is substantial when a petitioner has shown that resolution of the merits of the *Strickland* claim would be "debatable amongst jurists of reason" or that the issues presented are "adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotation marks omitted). Thus, to determine whether a claim is substantial, *Martinez* requires the district court to *review* but not *determine* whether trial or appellate counsel's acts or omissions resulted in deficient performance and in a reasonable probability of prejudice, and to *determine* only whether resolution of the merits of the claim would be debatable among jurists of reason and the issues are deserving enough to encourage further pursuit of them.

ii.     Prong Two of *Martinez*: Ineffective Assistance of PCR Counsel

In addition to showing that the underlying IAC claim is substantial, a petitioner

seeking to invoke *Martinez* must also show either that he had no counsel on initial

postconviction review, or that his PCR counsel was "ineffective under the standards of

*Strickland*." 132 S. Ct. at 1318; *see Trevino*, 133 S. Ct. at 1918. "Ineffectiveness" is a

term defined by *Strickland* as (1) deficient performance and (2) a reasonable probability

of prejudice caused by the deficient performance. 466 U.S. at 694, 700.

As to PCR counsel's performance, not just any error or omission of PCR counsel

will be deemed "deficient performance" that will satisfy *Martinez*; if the PCR "attorney in

the initial-review collateral proceeding did not perform below constitutional standards,"

the PCR attorney's performance does not constitute "cause." 132 S. Ct. at 1319. The

*Strickland* standards for analyzing deficient performance set forth above apply with equal

force to PCR counsel in the context of a *Martinez* argument. Importantly, PCR counsel

"is not necessarily ineffective for failing to raise even a nonfrivolous claim." *Sexton v.

Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012).

If PCR counsel's performance is deficient, then the court must consider whether

that performance was prejudicial under *Strickland*. *See Clabourne v. Ryan*, 745 F.3d 362,

377 (9th Cir. 2014). Therefore, even if a petitioner shows that his IAC claims are

substantial under the first *Martinez* prong, he must still show that postconviction counsel

rendered deficient performance and that, "but for post-conviction counsel's failure to

raise [the substantial IAC] claims, there is a reasonable probability that the result of the

post-conviction proceeding would have been different" under the second *Martinez* prong.

*Id.* at 378. These two inquiries will, at times, collapse into one. *Id.* at 382 ("Under the circumstances of this case, if [the petitioner] succeeds in demonstrating that he was prejudiced by the failure of his post-conviction counsel, he will necessarily have established that there is at least 'some merit' to his claim that he suffered ineffective assistance of trial counsel at resentencing.").

The Court may address either inquiry first, and the resolution of one prong may obviate the need to address the other. *See Martinez*, 132 S. Ct. at 1319 ("When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, *i.e.*, it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.").

> iii.   Claims One, Two, and Eight are Not Substantial, and Initial PCR Counsel Was Not Ineffective in Failing To Raise Them

Claims One and Two—that trial counsel rendered ineffective assistance by (1) failing to advise Petitioner he had a right not to participate in the psychosexual evaluation for purposes of sentencing and (2) failing to move to suppress that evaluation—are based on the Idaho Supreme Court's decision in *Estrada v. State*, 149 P.3d 833 (Idaho 2006). *Estrada* held that the Sixth Amendment right to effective assistance of counsel applies during a court-ordered psychosexual evaluation and that trial counsel's failure to advise a defendant of his Fifth Amendment right to remain silent at such an evaluation can constitute deficient performance under *Strickland*. *Id.* at 837-39.

**MEMORANDUM DECISION AND ORDER  18**

However, initial PCR counsel filed Petitioner's amended postconviction petition in June 2004, more than two years before *Estrada* was decided. Initial PCR counsel was not ineffective for failing to anticipate the *Estrada* decision. *See Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) ("[Petitioner's] lawyer cannot be required to anticipate our decision in [a] later case, because [counsel's] conduct must be evaluated for purposes of the performance standard of *Strickland* 'as of the time of counsel's conduct.'") (quoting *Strickland*, 466 U.S. at 690). Before *Estrada*, there was no reason for initial PCR counsel to litigate an IAC claim with respect to a psychosexual evaluation because the courts had not yet recognized that such a claim was viable. *See Veenstra v. Smith*, 2014 WL 1270626 *17 (D. Idaho Mar. 26, 2014) ("Claim Nine, which is based on trial counsel's failure to advise Petitioner of his right to remain silent during the psychosexual evaluation, is not substantial because prior to the Idaho Supreme Court's 2006 decision in *Estrada*, such a right had not been recognized, and such a claim would have been entirely novel.").

Further, the Idaho Court of Appeals held in 2009 that *Estrada* is not retroactive; thus, it would not have applied to Petitioner's case, which became final long before *Estrada* was decided. *Kriebel v. State*, 219 P.3d 1204, 1207 (Idaho Ct. App. 2009). Finally, Petitioner has offered nothing to support a claim that had he refused to participate in the psychosexual evaluation, there is a reasonable probability that his sentence would have been different.[2] Therefore, Claims One and Two are insubstantial, and PCR counsel

---

[2] A defendant's refusal to participate in the psychosexual evaluation "does not mean . . . that the sentencing court would not conduct a presentence investigation (PSI) and have a PSI

was not ineffective in failing to raise them during Petitioner's initial-review postconviction proceedings.

Claim Eight alleges that direct appeal counsel was ineffective for raising only a state-law sentencing claim instead of any federal constitutional claims. (Dkt. 47-1 at 41-46.) Specifically, Petitioner argues that instead of pursuing a claim that was a "dead bang loser," direct appeal counsel should instead have argued that the prosecutor committed misconduct by eliciting false statements from Petitioner's victim at the preliminary hearing or at sentencing through a letter she wrote to the court. (*Id*. at 43.)

Petitioner cannot show a substantial claim of ineffective assistance of direct appeal counsel for failing to raise a prosecutorial misconduct claim related to the victim's testimony at the preliminary hearing or the statements in her letter. Petitioner himself admitted during postconviction proceedings that he had genital-to-anal contact with the victim, but claimed that some of the victim's other statements were untrue:

| Petitioner: | . . . And I didn't want to put her [the victim] through the stuff you [the prosecutor] were telling her to say. |
| Prosecutor: | Which was to tell the truth? |
| Petitioner: | Which was forcefully to get her to testify against her will. |

---

report prepared; rather, the PSI report would be based only on interviews with other people, Petitioner's criminal record, and other materials derived from sources other than Petitioner." *See Hoak v. Idaho*, 2013 WL 5410108, *15 (D. Idaho Sept. 25, 2013). Petitioner has not established a colorable claim that the PSI report or the state court's sentencing decision would have any been different had he refused to participate in the psychosexual evaluation.

**MEMORANDUM DECISION AND ORDER  20**

| | |
|---|---|
| Prosecutor: | Did she lie on the stand? |
| Petitioner: | Yes, sir. |
| Prosecutor: | How did she lie on the stand, Mr. Melton? |
| Petitioner: | When she was doing her last statement in the courtroom where she said that she seen me choke . . . her mother. I have never choked her mother or hurt her mother in any way. |
| Prosecutor: | That was during the sentencing part? |
| Petitioner: | Yes. |
| Prosecutor: | And did I tell her to lie on the stand? |
| Petitioner: | It was a letter that she didn't write, from what I understand. |
| Prosecutor: | Okay, so that's when she lied. She didn't come here and testify at sentencing, did she? |
| Petitioner: | *I did not try to stick it up her butt like you guys told me. I rubbed it up against the crack of her butt. I didn't put it up the part where she takes a shit at.* Excuse my way of putting that, sir. |
| Prosecutor: | She didn't come into the courtroom and lie, as you previously stated? |
| Petitioner: | Well, that I threw her on the bed, yes, that was a lie. *I did not throw [her] on the bed. I sat her on the bed.* |

(State's Lodging C-2 at 95-96) (emphasis added).

Petitioner offers nothing more than his conclusory and self-serving statements that the victim lied at the preliminary hearing or in the letter read at sentencing. Such

**MEMORANDUM DECISION AND ORDER  21**

allegations are woefully insufficient and do not allow the Court to conclude that Claim Eight is substantial.

Moreover, even if the victim had lied when she stated that Petitioner choked her mother and that he threw the victim on the bed when he molested her—which the Court does *not* find—it is plain that any prosecutorial misconduct claim raised on appeal, as well as any argument that appellate counsel was ineffective in failing to raise such a claim, fails for lack of prejudice. Petitioner's own words show unequivocally that he molested the victim in a vicious and violent manner. Petitioner's attempts to minimize his crime are unavailing in this Court, just as they would have been in the state courts. Any alleged mistakes in the victim's testimony would have been minor misstatements, which, even if incorrect, could not have affected the outcome of Petitioner's criminal proceedings in any way. Petitioner simply cannot establish a substantial claim that the prosecutor committed misconduct, that the victim actually lied, or that his direct appeal counsel was ineffective for failing to raise these issues on appeal. Therefore, Petitioner's initial PCR counsel was not ineffective in failing to raise an IAC claim based on the conduct of direct appeal counsel. As with Claims One and Two, Petitioner has not shown *Martinez* cause and prejudice for the default of Claim Eight.

## CONCLUSION

Petitioner does not dispute that his remaining claims—Claims One, Two, Three, Four, Six, Eight, and Ten—are procedurally defaulted. Petitioner has not established

cause and prejudice to excuse the default, under either the traditional *Coleman* analysis or the more recent *Martinez* analysis. Therefore, the Petition will be dismissed with prejudice.

## ORDER

**IT IS ORDERED:**

1.  Petitioner's Motion for Extension of Time to File Response (Dkt. 62) is GRANTED.

2.  Petitioner's Second Motion for Extension of Time to File Response (Dkt. 64) is GRANTED. Petitioner's response (Dkt. 67) is deemed timely.

3.  Petitioner's Motion for Leave to File an Oversize Brief (Dkt. 66) is GRANTED.

4.  Respondent's Motion for Extension of Time to File Reply (Dkt. 68) is GRANTED. Respondent's reply (Dkt. 69) is deemed timely.

5.  Respondent's Motion to Strike (Dkt. 71) is DENIED.

6.  Respondent's Motion for Summary Dismissal (Dkt. 60) is GRANTED, and this entire action is DISMISSED with prejudice.

7.  The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Habeas Rule 11. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a

certificate of appealability from the Ninth Circuit by filing a request in that court.



DATED: **November 7, 2014**

Honorable Candy W. Dale
United States Magistrate Judge